UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
(White Plains Division)

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | Case No. 19-24115 (RDD) |
| LEON LOWENTHAL., | : | |
| | : | |
| Debtor. | : | |
| | : | |

| | | |
|---|---|---|
| Rockford Holdings Group LLC, Steve Makowsky and Joe "Yossi" Davidson, in every capacity, | : | Adversary Case No._____ |
| Plaintiffs, | : | |
| -against- | : | |
| LEON LOWENTHAL, PROSPERITY LM, INC., PW INSURANCE AGENCY CORP, THE BIRCH GROUP, INC., | : | |
| Defendants, | : | |
| and JOHN DOE #1 through JANE DOE #10, the last 10 names being fictitious and unknown to the Plaintiffs, the persons or parties intended being the occupants, tenants, persons or entities, if any, having or claiming an interest in or lien upon the premises described in the adversary complaint, | : | |
| **Doe Defendants.** | : | |

Plaintiffs, Rockford Holdings Group LLC, Steve Makowsky and Joe "Yossi" Davidson, in every capacity, through counsel, as and for their complaint against Defendants , Leon Lowenthal, Prosperity LM, Inc., PW Insurance Agency Corp, The Birch Group Inc., upon their knowledge and upon information and belief as to other matters, allege as follows:

1

## Nature of Action

1. Plaintiffs bring this action pursuant to 11 U.S.C. §523(a)(2)(A),(B),(4),(6),(c)(1), Rules 4007(c) and 7001 (1),(6),(9) of the Federal Rules of Bankruptcy Procedure

2. Pursuant thereto, Plaintiffs ask the Court to except from discharge the debts owed by the Debtor Leon Lowenthal to Plaintiffs.

3. Pursuant thereto, Plaintiffs also seek additional relief against the other non-Debtor Defendants under predicate State Law.

4. Plaintiffs also seek attorney's fees and costs pursuant to applicable law against Defendants.

## Jurisdiction and Venue

5. This adversary proceeding is brought pursuant to 11 U.S.C. §§105 and 28 U.S.C. §157 (b)(2)(H)(I)(J), 28 U.S.C. §1334, 28 U.S.C. §2201 and Rules 7001 (1), (6), (9) and 4007(c) of the Federal Rules of Bankruptcy Procedure.

6. The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §157 (a)(b)(2)(I),(J),(c) and §1334.

7. This matter is a core proceeding under 28 U.S.C. 28 U.S.C. §157 (a)(b)(2)(I),(J).

8. This matter also pertains to claims of Plaintiffs that are related to the bankruptcy case pursuant to 28 USCS § 157 (c) (1).

9. Venue lies properly in this Court pursuant to 28 U.S.C. §1409.

## Parties

10. Plaintiff Rockford Holdings Group LLC is a Domestic Limited Liability Company and conducts business within the jurisdiction of the Court.

11. Plaintiffs Steve Makowsky and Joe "Yossi" Davidson, in every capacity, are members

2

of Rockford Holdings Group LLC.

12. Defendant Leon Lowenthal is the Debtor herein ("Debtor"). Said Defendant is an agent of the other Defendants.

13. Defendant Lowenthal during the period on or about December 11, 2006 through October 31, 2007 was a licensed NY Life Insurance Broker under License 1043007.

14. Defendant Lowenthal during the period on or about May 13, 2016 through May 12, 2018 was a licensed NY Life Insurance Agent under License 1043007.

15. Defendant The Birch Group, Inc. is an Affiliate of the Debtor. Said Defendant is an agent of the other Defendants.

16. Defendant Lowenthal was a partner in Defendant The Birch Group.

17. Per his Ch.11 Schedules, Defendant Lowenthal was a principal, officer and/or member of Defendants Prosperity LM, Inc . and PW Insurance Agency Corp.

18. Defendant PW Insurance Agency Corp. is an affiliate of the Debtor and a Domestic Business Corporation. Said Defendant is an agent of the other Defendants.

19. Defendant PW Insurance Agency Corp. during the period of July 1, 2017 through June 30, 2019 was a licensed Life Insurance Agent and a fiduciary under license 1081921.

20. Defendant Lowenthal ("Lowenthal or Debtor") and Defendant PW Insurance Agency Corp ("PW") are individually and collectively referred to as Defendant Life Broker.

21. Defendant Prosperity LM, Inc. is an affiliate of the Debtor and a Domestic Business Corporation. Said Defendant is an agent of the other Defendants.

22. The Defendants named "John Doe #1" through "Jane Doe #10" are fictitious and unknown to the Plaintiffs. They are named as Defendants to designate tenants,

3

occupants, and other persons or parties in possession of, having or claiming an interest in or lien on the premises which interest or lien, if any, accrued subsequent to interests of Plaintiffs, as described below, and is subordinate thereto.

## Procedural Background

23. Debtor Lowenthal filed a Ch.11 on December 6, 2019.

24. Debtor's Ch.11 Schedules identified " Yossi Davidson, $450,000.00, Unsecured, disputed claim".

25. Debtor's Ch. Ch.11 Schedules failed to identify Plaintiffs Rockford Holdings Group LLC and Steve Makowsky

26. Debtor's Ch. Ch.11 Schedules (#33) identified a Fraudulent Conveyance Claim styled as "Lowenthal v Meiser: $1.6 million fraudulent conveyance"

27. Upon information and belief "Meiser" is interested in Debtor's Affiliates including The Birch Group Inc.

28. A Kings County State Court Complaint was filed against the Debtor's Father-in-Law Herzog and Herzog's daughter the wife of the Debtor on January 16, 2020 in Kings County under Index Number 501256/2020 ("Kings County Action").

29. On or about February 2, 2020 Plaintiffs Objected to Debtor's Proposed Plan and Disclosure Statement.  (ECF #24).

30. On or about February 27, 2020 the Kings County Action was removed to the EDNY under Civil Docket #1:20-cv-01081-AMD-LB.

31. The last day for filing an objection to discharge is April 14, 2020 so this Complaint is timely.

## Factual Allegations Applicable to All Counts

32. In essence, during the period 2017 through 2019, Defendants Lowenthal ("Lowenthal"), Prosperity LM, Inc. ("Prosperity") and PW Insurance Agency Corp ("PW") "Brokered" high-end life insurance policies to their "Life Clients".

33. During the periods of their licensure, and upon information and belief after termination of one or more of their licenses, Lowenthal, Prosperity and and/or PW Brokered tens of millions of dollars of High End Life policies through among others Zurich American Life Insurance, Fidelity & Guaranty Life Insurance Company, Prudential Insurance Company, Nationwide Life Insurance Company and United of Omaha Life Insurance Company ("Life Companies").

34. Defendants Lowenthal, Prosperity and PW engaged in a fraudulent scheme to obtain loans from Plaintiffs as investors to fund the initial premiums for High End Life Policies.

35. The Plaintiffs' investor funds were to be "repaid" out of commissions paid to the Broker Defendants by the Life Companies.

36. The Plaintiffs' investment loans were to be repaid out of commissions paid equaling between 108% and 120% of the first-year premium.

37. For example, on or about September 28, 2018, Zurich "wrote" a High End Life Policy with an Initial annual premium of $745,195.25 that carried a death benefit $10,000,000,00.

38. That would have netted the Life Brokers an $804,810.87 commission from which Plaintiffs' investment had to be repaid.

39. Or or about November 15, 2018, Debtor Lowenthal and the individual member Plaintiffs entered into an Agreement whereby Plaintiffs loaned $745,000 to the Defendant Lowenthal.

40. On or about November 15, 2018 the Plaintiffs wired $745,000 to Defendant Lowenthal and his Affiliate Prosperity from Rockford's Signature Bank Checking Account.

41. On or about December 18, 2018 pursuant to their Agreement, a Prosperity LM Inc. "repayment" Check #425 in the amount of $790,000 payable to Plaintiff Rockford Holdings Group drawn on Prosperity's Wells Fargo Bank was delivered to Plaintiffs by Defendants Lowenthal ("Prosperity $790,000 Check").

42. On or about December 18, 2018 the Prosperity $790,000 Check was deposited by Plaintiffs at Signature Bank.

43. On or about December 20, 2018 that Prosperity $790,000 Check was dishonored by Defendant Prosperity's Bank.

44. The Loans Plaintiffs made to Defendants to finance the High End Life Transactions began on or about October 25, 2018 and continued on until January 2, 2019, Plaintiffs' Rockford Bank Account was debited with $1,880,000.00 and credited with $1,399,000.00 ("Plaintiffs' Loans").

45. The apparent net unpaid difference arising from the Plaintiffs' Transactions/High End Life Transactions with Defendants was $481,000.00.

46. To fraudulently induce Plaintiffs' Loans, Defendants manufactured false insurance policies, bank deposit slips, commission checks, bank statements, and requests for wire instructions, and delivered, then dishonored the Prosperity $790,000 Check to induce, deceive and lull Plaintiffs into "loaning" the above identified funds ("Defendants Bad Acts").

47. Defendants Bad Acts meant that Plaintiffs' Loans and Transactions with Defendants were riddled with and informed by Defendants' Fraud, Deceit and Malfeasance.

48. In acting as aforesaid, the Debtor and Defendant PW acted as Licensed Insurance Brokers or Agent sand were fiduciaries with respect to Plaintiffs

49. In committing Defendants Bad Acts Debtor and Defendant PW breached fiduciary duties to Plaintiffs.

## Defendant Affiliate The Birch Group Inc

50. Upon information and belief Defendant THE BIRCH GROUP INC wrongfully obtained and used and has not repaid monies that are owed to the Plaintiffs.

51. During the above stated period, approximately 2018 through 2019, The Birch Group Inc. and Doe Defendants, as yet unidentified Domestic, Foreign Corporations and LLCs, all Affiliates of the Debtor, used the funds elicited from Plaintiffs funds to invest in real property in New Jersey, Pennsylvania, Connecticut, and Maryland for Defendants own benefit to the great prejudice of Plaintiffs.

52. For example, in or about October 2018, Defendant The Birch Group purchased Real Property known as the American Metro Center in Hamilton New Jersey, valued at 85 Million.

53. Because Plaintiffs' wrongfully obtained and unpaid funds were used to purchase Defendants' Real Estate, Plaintiffs are entitled to assert an equitable lien upon the Real Property purchased by Defendants, including the as yet unidentified Doe Defendants.

54. In or about February 2, 2019 Defendant Lowenthal's Affiliates, some of which are as yet unidentified, falsely represented a Multi Million Net Worth evidently in connection with an attempt to falsely induce Plaintiffs to invest in Real Estate.

**Count One**
**(Exception to Discharge of Debtor)**
11 U.S.C. §523(a)(2)(A),(B),(c)(1)

55. Plaintiff repeats and reiterates each of the allegations contained in the Complaint Numbers 1 through 54 as if more fully set forth herein at length.

56. Bankruptcy Code § 523(a)(2)(A) provides, in relevant part, that:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt--
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by --
> (A) false pretenses, a false representation or actual fraud, other than a statement respecting the debtor's or an insider's financial condition . . . .
> (B) use of a statement in writing—
> (i) that is materially false;
> (ii) respecting the debtor's or an insider's financial condition;
> (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
> (iv) that the debtor caused to be made or published with intent to deceive; or
> …
> (c)
> (1) Except as provided in subsection (a)(3)(B) of this section, the debtor shall be discharged from a debt of a kind specified in paragraph (2), (4), or (6) of subsection (a) of this section, unless, on request of the creditor to whom such debt is owed, and after notice and a hearing, the court determines such debt to be excepted from discharge under paragraph (2), (4), or (6), as the case may be, of subsection (a) of this section.

57. The Plaintiffs' Loans made to Defendants to finance the High End Life Transactions began on or about October 25, 2018 and continued on until January 2, 2019, Plaintiffs' Rockford Bank Account was debited with $1,880,000.00 and credited with $1,399,000.00 ("Plaintiffs' Loans").

8

58. Exclusive of return on investment, the apparent net unpaid difference arising from the Plaintiffs Transactions/High End Life Transactions with Defendants was $481,000.00.

59. To fraudulently induce Plaintiffs' Loans Defendants manufactured false insurance policies, bank deposit slips, commission checks, bank statements, and requests for wire instructions, and delivered, then dishonored the Prosperity $790,000 Check to induce, deceive and lull Plaintiffs into "loaning" the above identified funds ("Defendants Bad Acts").

60. Defendants Bad Acts meant that Plaintiffs Loans and Transactions with Defendants were riddled with and informed by Defendants' Fraud, Deceit and Malfeasance.

61. In acting as aforesaid, the Debtor and Defendant PW acted as Licensed Insurance Brokers or Agents and were held to the standard of a fiduciary with respect to Plaintiffs

62. In committing Defendants Bad Acts Debtor and Defendant PW breached fiduciary duties to Plaintiffs.

63. Given Defendants and Defendants Lowenthal's Bad Acts, manifestly Defendant Lowenthal is not entitled to a Discharge under Bankruptcy Code § §523(a)(2)(A),(B),(c)(1).

**Count Two**
**(Exception to Discharge of Debtor)**
**11 U.S.C. §523(a)11 U.S.C. §523(a)(4),(6)(c)(1)**

64. Plaintiffs repeat and reiterate each of the allegations contained in the Complaint Numbers 1 through 63 as if more fully set forth herein at length.

65. Bankruptcy Code § 523(a)(4),(6),(c)(1) provides, in relevant part, that:

9

> (a) A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt—
> . . .
> (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny . . . .
>
> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity;
> …
>
> (c)
> (1) Except as provided in subsection (a)(3)(B) of this section, the debtor shall be discharged from a debt of a kind specified in paragraph (2), (4), or (6) of subsection (a) of this section, unless, on request of the creditor to whom such debt is owed, and after notice and a hearing, the court determines such debt to be excepted from discharge under paragraph (2), (4), or (6), as the case may be, of subsection (a) of this section.

66. The Plaintiffs' Loans made to Defendants to finance the High End Life Transactions began on or about October 25, 2018 and continued on until January 2, 2019. Plaintiffs' Rockford Bank Account was debited with $1,880,000.00 and credited with $1,399,000.00 ("Plaintiffs' Loans").

67. The apparent net unpaid difference arising from the Plaintiffs Transactions/High End Life Transactions with Defendants was not less than $481,000.00.

68. To fraudulently induce Plaintiffs' Loans Defendants manufactured false insurance policies, bank deposit slips, commission checks, bank statements, and requests for wire instructions, and delivered then dishonored the Prosperity $790,000 Check to induce, deceive and lull Plaintiffs into "loaning" the above identified funds ("Defendants Bad Acts").

69. Defendants Bad Acts meant that Plaintiffs' Loans and Transactions with Defendants were riddled with and informed by Defendants' Fraud, Deceit and Malfeasance.

10

70. In acting as aforesaid, Debtor and Defendant PW acted as Licensed Insurance Brokers or Agent and were held to the standard of a fiduciary with respect to Plaintiffs.

71. In committing Defendants Bad Acts Debtor and Defendant PW breached fiduciary duties to Plaintiffs.

72. Given Defendants Bad Acts, Defendants and Defendant Lowenthal engaged in numerous transactions in which false documents were submitted to Plaintiffs.

73. Defendants' Bad Acts were a Fraud and a Fraudulent Scheme which has damaged and prejudiced Plaintiffs such that the amounts Loaned to Defendants was not less than $481,000.00 and should be excepted from discharge herein.

74. Defendants' Bad Acts also constituted willful and malicious injury by Defendants and Defendant Lowenthal has damaged and prejudiced Plaintiffs such that the amounts Loaned to Defendants by Plaintiffs of not less than $481,000.00 should be excepted from Debtor's discharge herein.

75. Given Defendants and Defendants Lowenthal's Bad Acts, manifestly Defendant Lowenthal is not entitled to a Discharge under Bankruptcy Code §§523(a)(4),(6)(c)(1)).

## Count Three
### (Equitable Lien Against Debtor Affiliates)

76. Plaintiffs repeat and reiterate each of the allegations contained in the Complaint Numbers 1 through 75 as if more fully set forth herein at length.

77. Upon information and belief Defendant The Birch Group Inc. wrongfully obtained and used and has not repaid monies that are owed to the Plaintiffs.

11

78. During the above stated period, approximately 2018 through 2019, The Birch Group Inc . and Doe Defendants, as yet unidentified Domestic, Foreign Corporations and LLCs, all Affiliates of the Debtor, used the funds elicited from Plaintiffs to invest in real property in New Jersey, Pennsylvania, Connecticut, and Maryland for Defendants own benefit to the great prejudice of Plaintiffs.

79. For example, in or about October 2018, Defendant The Birch Group purchased Real Property known as the American Metro Center in Hamilton New Jersey, valued at 85 Million.

80. Because Plaintiffs funds were wrongfully obtained by Defendants and not repaid and were used Defendants' Affiliates to purchase Defendants Real Estate, Plaintiffs are entitled to assert an equitable lien upon the Real Property purchased by Defendants, including the as yet unidentified Doe Defendants.

81. In or about February 2, 2019 Defendant Lowenthal's Affiliates, some of which are as yet unidentified, falsely represented a Multi Million Net Worth evidently in connection with an attempt to falsely induce Plaintiffs to invest in Real Estate.

82. Therefore, under applicable law, Plaintiffs seek an equitable lien against the Real Properties owned by the Debtor's Affiliates and an appropriate Order from the Court entitling Plaintiffs to file a Lis Pendens with the State County Recorder(s) with respect to Defendants including Defendants' Affiliates' Real Property.

**Count Four**
**(Constructive Trust Against Debtor's Affiliates)**

83. Plaintiffs repeat and reiterate each of the allegations contained in the Complaint Numbers 1 through 82 as if more fully set forth herein at length.

84. The Debtor's Affiliate Defendants have obtained the full benefit of the not less than $481,000.00 of Plaintiffs' Loans.

85. The Debtor's Affiliate Defendants have wrongfully detained the not less than $481,000.00 of Plaintiffs' Loans.

86. The Debtor's Affiliate Defendants have been unjustly enriched at Plaintiffs' expense.

87. As a result of the foregoing, equity and good conscience requires Debtor's Affiliate Defendants to make restitution to Plaintiffs of the not less than $481,000.00 of Plaintiffs' Loans.

88. As a result of the foregoing, a constructive trust is warranted against Debtor's Affiliate Defendants to make restitution to Plaintiffs of the not less than $481,000.00 of Plaintiffs' Loans. .

89. As a result of the foregoing, Plaintiffs have suffered actual damages of not less than $481,000.00 of Plaintiffs' Loans.

90. Plaintiffs are entitled to the imposition of a constructive trust against the Debtor's Affiliate Defendants to recover of not less than $481,000.00 of Plaintiffs' Loans; for an accounting, attorney's fees, costs, disbursements, according to law.

### Relief Requested

**WHEREFORE**, Plaintiffs demand relief as follows:

a) As to Count One, a Declaratory Order that $481,000.00 is owed to Plaintiffs by Defendant Lowenthal and this amount is excepted from discharge per 11 U.S.C. §523(a)(2)(A),(c)(1) and Rule 4007(c);

b) As to Count One, a Declaratory Order that $481,000.00 is owed to Plaintiffs by Defendant Lowenthal and this amount is excepted from discharge per 11 U.S.C. §523(a)(2)(B),(c)(1) and Rule 4007(c);

c) As to Count Two, a Declaratory Order that $481,000.00 is owed to Plaintiffs by Defendant Lowenthal and this amount is excepted from discharge per 11 U.S.C. §523(a)(4),(c)(1) and Rule 4007(c);

d)  As to Count Two, a Declaratory Order that $481,000.00 is owed to Plaintiffs by Defendant Lowenthal and this amount is excepted from discharge per 11 U.S.C. §523(a)(6),(c)(1) and Rule 4007(c);

e)  As to Count Three a Declaratory Order that Plaintiffs are entitled to an equitable lien in Debtor's Affiliate Defendants Real Property and an Order from the Court directing that the State County Clerk to file Plaintiffs' Lis Pendens against said Real Property wherever located;

f)  As to Count Four a Declaratory Order that Plaintiffs are entitled to a Constructive Trust in the amount of $481,000.00 against the Affiliate Defendants.

g)  Attorney's fees and costs as to all Counts;

h)  Plaintiffs hereby demand a trial by jury on all issues so triable;

i)  Such other and further relief as the Court deems proper.

Dated: Monsey, New York
March 29, 2020

Respectfully submitted.
JACOB GINSBURG, ESQ. PLLC

/s/ Jacob Ginsburg
By: Jacob Ginsburg, Esq.
One Concord Drive
Monsey, NY 10952
(845) 371-1914
Attorney for Plaintiffs